## COBB v. PERRY.

(October 23, 1900.)

*Trusts—Sufficiency of Evidence to Establish—Trustee.*

There being more than a scintilla of evidence that the defendant held certain property as trustee, that question should have been submitted to the jury.

CIVIL ACTION by Maud P. Cobb against O. H. Perry, H. H. Perry and Caroline Foy, heard by Judge *H. R. Starbuck,* at Spring Term, 1900, of CRAVEN Superior Court. Upon intimation by the Court that plaintiff and defendants other than O. H. Perry were not entitled to recover, the plaintiff and defendants other than O. H. Perry submitted to a nonsuit and appealed.

*W. D. McIver,* for the plaintiff, and defendants other than O. H. Perry.
*Simmons, Pou & Ward,* for O. H. Perry.

FAIRCLOTH, C. J.    The plaintiff sues to have the defendant, O. H. Perry, declared a trustee for the benefit of herself and other children of G. W. Perry and wife S. B. Perry. On February 3, 1877, G. W. Perry and wife conveyed a tract of land by deed to A. W. Wood, and on February 10, 1877, said Wood conveyed the same land to defendant, O. H. Perry; and it is alleged that the agreement was that the defendant should hold the land, pay off an incumbrance thereon, and then divide the land among the children. It is alleged that there was no other consideration in either deed. At the conclusion of the evidence his Honor was of opinion that plaintiff could not recover. A nonsuit and appeal was taken.

The only question for this Court to consider is whether

the case should have been submitted to the jury, and that
depends on the evidence.    We will refer to only a part of
the evidence.    The plaintiff testified that she heard a con-
versation between the defendant and the mother on the day
the deed was signed, after the father had signed, when "O. H.
Perry asked her (the mother) if she could not trust him,
and said that he did not want the property to cheat the other
children out of it; that he was willing to do what was right."
J. Oliver Foy testified:   "The day the first deed was made,
and before deeds were made, I came to Mr. Simmons' office,
and found him writing a deed.    O. H. Perry was there.    I
told O. H. Perry his father had said not to have the deed
written; that he would not sign it.    Mr. Simmons said,
'Well, who is to pay for it?'    O. H. Perry said he would pay
for it, and told Simmons to go ahead and write it.    I re-
turned to Mr. G. W. Perry's home about 12 o'clock.    About
1 o'clock p. m., O. H. Perry came in with J. E. West, Clerk
Superior Court, into the room where G. W. Perry was, and
had deed with him.    I was present.    G. W. Perry said to
O. H. Perry, 'Didn't Bob (referring to witness) tell you I
wouldn't sign the deed?'    O. H. Perry said he could see no
reason why G. W. Perry hesitated about signing the deed,
and went into an adjoining room with O. H. Perry, and per-
haps his daughter.    He signed the deed in the adjoining
room, and I was not present.    The day after the deed was
signed by G. W. Perry, but before Mrs. S. B. Perry signed it,
I heard a conversation between O. H. Perry and her.    I
asked her in presence of Oliver not to sign the deed; told her
she had a dower interest in it, and insisted on her not signing
it; told her it would not interfere with Oliver's attending to
the estate as his father wished, and that by not signing it she
would retain her dower interest.    Don't recall that Oliver
said anything.    Am positive he did not say he was not taking

it in trust.   After the deeds had been executed, Oliver often stated to me that it was his purpose to settle off the incumbrances upon the land, and divide the property, as his father wished.   G. W. Perry was in bad health at the time deed was made; was confined to his bed, and died a few weeks afterwards.   He was financially embarrassed."   Miss Koonce said that she talked with O. H. Perry several times, and he said he meant to do right by the children.   Mrs. Clara Foy testified for plaintiff and herself as follows:   "On the day before the day the deed was signed by father, I had a conversation with O. H. Perry.   He told me to use my influence with father to get him to make a deed for the plantation, and, as soon as he should get the deed, he would give me a right for my interest.   After the deed was written, but before it was signed, Oliver came into the room where my father was, and said, 'I have the deed and check written by Mr. Henderson for $1,000, and Mr. Simmons said that will do just as well.'   My father then said he would not sign the deed.   'You haven't done what you promised to do, and I won't sign it.'   Oliver then said, 'Come into the room with me, and I will tell you why I didn't stand to my promise.'   When they went into the other room, father again said, 'I won't sign it.'   Oliver then said, 'If you don't sign it, I will take what I have got and leave.'   I had gone into the other room with them.   When Oliver said this, my father then signed the deed.   Twelve years after this, I asked Oliver to buy me a home in Richlands.   He said he had promised his father to take the property, pay the debts, and keep a home for mother, and buy me a home, and take care of his little sister (the plaintiff), and that he intended to do it.   He said he would buy me a home, but never did."   Mrs. S. B. Perry testified:   "Before I signed the deed, the defendant, Oliver, told me he did not want to hold this property to cheat the children out of it, but must do what was

right; that Wood was to at once make a deed to him." The rule, so often stated, is that, when there is more than a *scintilla* of evidence, about which reasonable minds may differ, the evidence on the issue should be submitted to a jury. In the present case we think the evidence falls within the rule, and that the refusal to submit it to the jury was error. As the case goes back for trial, we refrain from expressing any opinion on other legal questions discussed on the argument.

*Venire de novo.*